UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JIANJUN LI and CHIXIN FANG,

                          Plaintiffs,           **MEMORANDUM AND ORDER**

 - against -                            2:20-cv-2289 (DRH) (ST)

VILLAGE OF SADDLE ROCK, DAN LEVY,
JAMES T. MURPHY and JOHN DOES 1-4,

                          Defendants.
----------------------------------------------------------------X

**APPEARANCES**

**MARGOLIN BESUNDER LLP**
Attorneys for Plaintiffs
3750 Expressway Drive South, Suite 200
Islandia, NY 11749
By:    Jeffrey D. Powell, Esq.
        Linda U. Margolin, Esq.

**MORRIS DUFFY ALONSO & FALEY**
Attorneys for Defendants
101 Greenwich Street, 22nd Floor
New York, NY 10006
By:    Cristina A. Knorr, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

     Plaintiffs Jianjun Li and Chixin Fang ("Plaintiffs") bring this action against

Defendants Village of Saddle Rock, Dan Levy, James T. Murphy, and John Does 1–4

(collectively "Defendants") alleging (1) malicious prosecution in violation of the

Fourth Amendment, the Due Process Clause of the Fourteenth Amendment, 42

U.S.C. § 1983, and New York state law, (2) malicious abuse of process in violation of

the Fifth Amendment, Due Process Clause of the Fourteenth Amendment, 42 U.S.C.

§ 1983, and New York state law, (3) conspiracy in violation of 42 U.S.C. § 1985(3),

and (4) *Monell* liability of Defendant Village of Saddle Rock for violations of 42 U.S.C. § 1983.   The action arises out of the Defendants' prosecution of Plaintiffs for failing to repair a retaining wall, Plaintiffs' conviction thereof, and the New York Appellate Term of the Supreme Court's subsequent reversal.   Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [DE 20].   For the reasons set forth below, Defendants' motion is GRANTED.

## BACKGROUND

The following facts from the Complaint and materials properly considered on Defendants' motion, *see infra* Discussion Section I, are taken as true for the purposes of this Order.

Plaintiffs Dr. Jianjun Li and Dr. Chixin Fang are Chinese-American co-owners of a home in the Village of Saddle Rock in Long Island, New York (the "Village"). (Compl. ¶¶ 14–17).   The named defendants are the Village, the Village Mayor Dan Levy, the Village Attorney James T. Murphy, and unidentified co-conspirators John Does 1–4.   (*Id.* ¶¶ 18–21).

In October 2015, Plaintiffs purchased property in the Village that is supported by a retaining wall at the shared border with its two neighboring properties.   (*Id.* ¶¶ 22, 23, 27, 28).   Around the time of Plaintiffs' purchase, their neighbors performed excavation work that destabilized the natural slope between the properties and impaired the lateral support of the retaining wall.   (*Id.* ¶¶ 30–31).   Plaintiffs complained to Levy, who indicated the problem "was minor and would all be fixed in the spring."   (*Id.* ¶¶ 36–37).

In February 2016, a piece of retaining wall on a neighbor's property collapsed and caused Plaintiffs' to subside. (*Id.* ¶¶ 34–35). With the condition now worsened, Levy tried to convince Plaintiffs that they "were personally liable for repairing" the retaining wall and re-stabilizing the slope. (*Id.* ¶ 38). Levy recommended that Plaintiffs hire one of their neighbor's contracting company to replace the wall, which would have cost $160,000.00 plus survey and engineering expenses. (*Id.* ¶¶ 42–43). Levy is alleged to have "a long-standing business, social and/or personal relationship" with Plaintiffs' neighbors, belonging to the same "civil, municipal and/or religious committees or groups." (*Id.* ¶¶ 39–40). Around this time, Levy allegedly stated that the neighbors "have done enough for the Village" and proposed to "[l]et the Chinaman pay." (*Id.* ¶ 41). The Complaint does not identify to whom Levy made the comment. (*See id.*). Plaintiffs declined to repair the wall. (*Id.* ¶ 44).

Levy then directed the Village to hire Plaintiffs' neighbor's contracting company "to erect a temporary wooden retaining wall," which required helical piles to be driven into Plaintiffs' property and which was done without their consent. (*Id.* ¶¶ 46–47). When the temporary wall quickly failed, Levy demanded that Plaintiffs reimburse the Village of the cost: $35,000.00. (*Id.* ¶ 48). The Complaint does not set out the dates on which the temporary wall went up or collapsed. (*See id.* ¶¶ 46–48).

On February 15, 2016, an architect assessed the retaining wall and determined that it was not Plaintiffs' responsibility, advising Levy of the same. (*Id.* ¶¶ 49–52). The Complaint does not reveal who retained the architect. (*See id.*). Levy nevertheless directed Paul Lauria, a Village building inspector, to issue a "Notice of

Unsafe Condition" due to Plaintiffs' "violation of Section 48-13(B&C) of the Village of Saddle Rock Building Code." (*Id.* ¶¶ 53–56 (quoting the Notice)). The order, dated February 17, 2016, demanded Plaintiffs repair the retaining wall by February 23, 2016. (*Id.*). Plaintiffs hired an engineer to design a replacement wall, though they disclaimed any intention to pay for its construction. (*See id.* ¶¶ 59–61). Levy encouraged Plaintiffs' engineer to convince them to pay for the wall and offered future work in exchange for the engineer's efforts to that end. (*Id.* ¶ 61). During his conversation with the engineer, Levy allegedly "mocked [Plaintiffs'] Chinese accent." (*Id.*).

On February 25, 2016, Levy directed Lauria to send a letter to Plaintiffs which called their attention to a $500.00 per-day fine and thirty days imprisonment should the wall remain unremedied. (*Id.* ¶¶ 62, 64). Village Attorney Murphy later followed up with a letter Plaintiffs, noting the accruing amount of the fine. (*Id.* ¶ 63).

On June 17, 2016, Levy directed Murphy to write another letter, demanding Plaintiffs pay $35,000.00 to the Village in satisfaction of the outstanding violations. (*Id.* ¶¶ 70–71). In July, the Village brought criminal charges against Plaintiffs for violations of § 48-13(B) & (C) of the Village Code. (*Id.* ¶¶ 74–76, 79). The Village Justice denied Plaintiffs' motion to dismiss the charges on December 22, 2016, held a four-day trial across the first half of 2017, ultimately convicted Plaintiffs on October 17, 2017, and imposed a fine in the amount of $202,000.00. (*Id.* ¶¶ 77–78, 83, 85–86).

The New York Supreme Court Appellate Term, Second Department reversed Plaintiffs' conviction on May 16, 2019. (*Id.* ¶ 91). The accusatory instrument's § 48-

13(B) charge was "facially insufficient," and thus "jurisdictionally defective," and its § 48-13(C) charge was improper because that section "does not charge an offense." (*Id.* ¶¶ 90–91; Decision & Order of New York Supreme Court Appellate Term, Second Department ("2d Dep't Order"), Ex. C [DE 20-5] to Decl. of Cristina A. Knorr ("Knorr Decl.") [DE 20-1]).[1] Accordingly, charges were dismissed.  (2d Dep't Order; *see* Compl. ¶ 94).

Plaintiffs brought this action on May 21, 2020, and Defendants moved to dismiss on September 4, 2020.  [DE 1, 20].

## LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  The plausibility standard is guided by two principles.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions.  Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice."  *Iqbal*, 556

---

[1]     The New York Supreme Court Appellate Term, Second Department's decision is published at *People v. Jianjun Li*, 64 Misc. 3d 33, 101 N.Y.S.3d 817 (N.Y. App. Term, 2d Dep't 2019).

U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

## DISCUSSION

## I.    Documents Considered

Though no party raises the issue, the Court first addresses the materials extraneous to the Complaint considered on Defendants' motion. In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court is

generally limited to the complaint and documents attached thereto. *See* Fed. R. Civ. P. 12(d); *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013). A court "'may also consider matters of which judicial notice may be taken.'" *Apotex Inc. v. Acorda Therapeutics, Inc.* 823 F.3d 51, 60 (2d Cir. 2016) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)); *see Bristol v. Nassau County*, 2016 WL 2760339, at *4 (E.D.N.Y. May 12, 2016) ("On a motion to dismiss, consideration is limited to the factual allegations in plaintiff's amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." (internal quotation marks omitted)).

Plaintiffs' Complaint relies on, quotes, and thus incorporates both the accusatory instrument and the Appellate Term's decision. Compl. ¶¶ 9, 75, 91, 127. Courts often consider such documents on a Rule 12(b)(6) motion to dismiss a complaint bringing 42 U.S.C. § 1983 claims premised thereupon. *E.g.*, *Sausa v. Vill. of W. Hampton Dunes*, 2019 WL 7598667, at *4 (E.D.N.Y. June 10, 2019) (Shields, Mag. J.) ("[T]he Court may consider any document incorporated into the Complaint by reference, which the Appearance Tickets most certainly are." (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)), *report and recommendation adopted as modified*, 2019 WL 4874898 (E.D.N.Y. Sept. 30, 2019); *Leder v. Am. Traffic Sols.*, 81 F. Supp. 3d 211, 220 (E.D.N.Y. 2015) (considering a "Notice of Liability"

because the complaint "makes explicit reference to it" and plaintiff's "claims for liability arise, at least in part, from" her receipt thereof); *Weaver v. City of New York*, 2014 WL 950041, at *3 (E.D.N.Y. Mar. 11, 2014) ("A court may certainly take judicial notice of public records for their existence, such as an indictment or documents relating to the disposition of a criminal case."); *see generally Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon those documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."). Therefore, the Court considers both the accusatory instrument and the Appellate Term's decision.

## II.    Malicious Prosecution

Plaintiffs bringing malicious prosecution claims under § 1983 must "demonstrate: (i) the commencement or continuation of a criminal proceeding against [them]; (ii) the termination of the proceeding in [their] favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)). Section 1983 malicious prosecution claims are "properly pled as Fourth Amendment violation[s]," *Williams v. Young*, 769 F. Supp. 2d 594, 603 (S.D.N.Y. 2011) (citing *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)), and thus require a "seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests," *Mitchell*, 841 F.3d at 79

(quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)); *see Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018).

Defendants move to dismiss Plaintiffs' malicious prosecution claims on two bases: (a) the underlying proceeding did not terminate in Plaintiffs' favor and (b) there was no search or seizure in violation of the Fourth Amendment. Defs. Mem. at 4–5 [DE 20-2].

## A. Termination in Plaintiffs' Favor

"Where a criminal proceeding has been terminated in favor of the accused by judicial action of the proper court or official in any way involving the merits or propriety of the proceeding . . . a foundation in this respect has been laid for an action of malicious prosecution." *Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989) (ellipses in original) (quoting *Halberstadt v. N.Y. Life Ins. Co.*, 194 N.Y. 1, 86 N.E. 801, 803–04 (N.Y. 1909)). Defendants argue that the charges against Plaintiffs were dismissed without reference to their merits. Defs. Mem. at 4–5.

In *Lanning v. City of Glens Falls*, the Second Circuit made clear that a "favorable termination" requires "affirmative indications of innocence." 908 F.3d at 28; *Butler v. Sampognaro*, 2019 WL 3716595, at *4 (D. Conn. Aug. 7, 2019) ("*Lanning* declines to presume any termination of a prosecution is a favorable termination absent 'affirmative indications of innocence.'"). For example, the *Lanning* complaint did not "specify[] how or on what grounds" charges were dismissed. 908 F.3d at 28. The Second Circuit held that this "vague allegation [was] consistent with dismissal on any number of procedural or jurisdictional grounds, all of which *fail* to

affirmatively indicate innocence." *Id.* (emphasis added). The Second Circuit "reaffirmed the longtime requirement that favorable termination[s]" must implicate a prosecution's "merits" and not merely procedure or jurisdiction. *Rosario v. City of New York*, 2019 WL 4450685, at *4 (S.D.N.Y. Sept. 16, 2019).

The Second Circuit has "highlight[ed] the need to separately analyze the charges claimed to have been maliciously prosecuted." *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) (discussing *Janetka*, 892 F.2d 187 (2d Cir. 1989)); *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 335–36 (E.D.N.Y. 2006) (Bianco, J.). Plaintiffs were charged with violations of Village of Saddle Rock Code § 48-13(B) and (C). Compl. ¶ 79; *see* 2d Dep't Order.

### 1.    Section 48-13(B)

Plaintiffs' § 48-13(B) charge was not terminated in their favor. The Appellate Term explained that "the factual allegations in support of the information which charged [Plaintiffs] with violating Village of Saddle Rock Code § 48-13(B) . . . did not provide [Plaintiffs] with sufficient notice to prepare a defense and were not adequately detailed to prevent defendants from being tried again for the same offense." 2d Dep't Order. This infirmity rendered the accusatory instrument "facially insufficient" – a "jurisdictional[] defect[]" requiring dismissal. *Id.* (quoting *People v. Sumter*, 151 A.D.3d 556, 557, 58 N.Y.S.3d 304 (N.Y. App. Div., 1st Dep't 2017)).

Dismissals premised on jurisdiction are not terminated on the "merits" and are thus not "in favor of" a malicious prosecution plaintiff. *E.g.*, *Culberth v. Town of E. Hampton*, 2020 WL 2537263, at *2–3 (E.D.N.Y. May 19, 2020) (dismissing malicious

prosecution claims where "[p]laintiff's disorderly conduct and resisting arrest convictions were reversed and the accusatory instruments were dismissed as a result of jurisdictional defects"); *Hagans v. Nassau Cnty. Police Dep't*, 2020 WL 1289529, at *6–7 (E.D.N.Y. Mar. 18, 2020) ("Plaintiff's [r]esisting [a]rrest [c]onviction was reversed and the accusatory instrument was dismissed as a result of a jurisdictional defect." (citing *People v. Hagans*, 63 Misc. 3d 139(A), 114 N.Y.S.3d 800 (N.Y. App. Div., 2d Dep't 2019))).  Because the Plaintiffs' § 43-18(B) charge was dismissed on jurisdictional grounds, Plaintiffs' malicious prosecution claim on this charge fails.

### 2.    Section 48-13(C)

The § 48-13(C) charge against Plaintiffs, by contrast, was terminated in their favor because the appellate court provided an "affirmative indication[] of innocence." *See Lanning*, 908 F.3d at 28.  Held the state court:

> Village of Saddle Rock Code § 48-13(C) does not charge an offense; rather, it sets forth how a building official can determine whether a structure or condition is dangerous or unsafe upon an inspection. Therefore, *defendants cannot be found guilty of violating this section*.

2d Dep't Order (emphasis added).  Such a statement could hardly be clearer as to Plaintiffs' innocence.  It is "well-settled" that "[p]roceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is *not guilty*." *Lanning*, 908 F.3d at 26 (emphasis added) (quoting *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980)).

No individual could be more innocent than one charged and convicted of a "crime" for conduct not criminalized.  *Cf. Rogers v. Tennessee*, 532 U.S. 451, 467–68, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (Scalia, J., dissenting) ("The maxim *nulla*

*poena sine lege* ['No penalty without a law,'] which dates from the ancient Greeks . . . [,] has been described as one of the most widely held value-judgments in the entire history of human thought." (internal quotation marks omitted)).  Therefore, Defendants are incorrect to say Plaintiffs' § 48-13(C) charge was not terminated in Plaintiffs' favor.

### B.    Fourth Amendment Seizure

"[T]o sustain a § 1983 malicious prosecution claim, there must be a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Washington*, 373 F.3d at 316 (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995)).  "[T]he issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010); *e.g.*, *Faruki v. City of New York*, 517 Fed. App'x 1, 2 (2d Cir. 2013) ("The proceedings against Faruki placed no restriction on her other than a requirement that she appear in court on two occasions—an insufficient deprivation of liberty to support a Fourth Amendment malicious prosecution claim."); *Wiles v. City of New* York, 2016 WL 6238609, at *10 (S.D.N.Y. Oct. 25, 2016), *aff'd*, 724 Fed. App'x 52 (2d Cir. 2018).  In that respect, ordinary tickets "alleg[ing] violations of the Village Code" fail to establish a Fourth Amendment seizure.  *Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 228 (E.D.N.Y. 2010) (Bianco, J.) (citing cases); *Manbeck v. Micka,* 640 F. Supp. 2d 351, 370 (S.D.N.Y. 2009) (dismissing a § 1983 malicious prosecution claim were plaintiff

"was merely issued appearance tickets to appear in Town Justice Court to answer misdemeanor charges of violations of the Town's Zoning Laws," was never "physically detained in any way," and suffered no "'seizure' sufficient to satisfy the constitutional element of a Section 1983 action")

Here, as in *Burg* and *Mangino*, the accusatory instrument simply required Plaintiffs "to appear in court," thereby "effectuat[ing] due process." *Compare* Court Information, Ex. B [DE 21-3] to Decl. of Jeffrey D. Powell ("Powell Decl.") [DE 21-1], *with Burg*, 591 F.3d at 98, *and Mangino*, 739 F. Supp. 2d at 227. Plaintiffs were not arrested or detained, and their travel was not restricted. *See* Court Information, Ex. B to Powell Decl. Accordingly, no Fourth Amendment seizure occurred. *See Mangino*, 739 F. Supp. 2d at 227 (quoting *Burg*, 591 F.3d at 98).

The *Rotenberg v. Town of Mamaroneck* Court analyzed strikingly similar facts and reached the same result. 2010 WL 3468051 (S.D.N.Y. Aug. 24, 2010). The *Rotenberg* plaintiffs had an allegedly defective retaining wall on their property, causing their town to issue "a Notice of Violation and Order to Remedy the Same," which threatened "possible fines and imprisonment" if it was not repaired. *Id.* at *1. When the plaintiffs did not repair the wall, the town brought criminal charges. *Id.* at *2. Their trial ended in acquittal. *Id.* On a motion to dismiss the plaintiffs' subsequent civil case for malicious prosecution, the Honorable Jed Rakoff held "that requiring plaintiffs to appear in court twice in connection with the summons—for an initial appearance and a one-day trial—is not a sufficient deprivation of liberty to rise to the level of a constitutional injury." *Id.* at *3. Here, Plaintiffs' criminal trial lasted

four days, Compl. ¶¶ 83, 118, and the Village Justice's guilty verdict was subsequently reversed on appeal, *id.* ¶ 91.  These differences, however, do not impact the Fourth Amendment seizure analysis in any meaningful way.  *Cf. Burg*, 591 F.3d at 99 ("The number of appearances may bear upon whether there was a seizure—though it is hard to see how multiple appearances required by a court, or for the convenience of the person answering the summons, can be attributed to the conduct of the officer who issues it.").

Plaintiffs argue that the accusatory instrument's threat of fines or imprisonment suffices to establish a Fourth Amendment seizure.  Pl. Opp. at 3–4 [DE 21].  "But [the Supreme Court's decision in to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] cannot be read to mean that the issuance of a summons (any more than a testimonial subpoena or a call to jury duty) would constitute a seizure simply because it threatens a citizen with the *possibility* of confinement if he fails to appear in court."  *Burg*, 591 F.3d at 99 (emphasis in original) (quoting *Britton v. Maloney*, 196 F.3d 24, 29–30 (1st Cir. 1999)).  "To hold otherwise would transform every traffic ticket and jury summons into a potential Section 1983 claim."  *Id.* (quoting *Bielanski v. County of Kane*, 550 F.3d 632, 642 (7th Cir. 2008)).

Plaintiffs' malicious prosecution claim under the Fourth Amendment is dismissed.

## C.  Malicious Prosecution in Violation of Fourteenth Amendment Due Process

Plaintiffs also bring a malicious prosecution claim "in violation of the due process clause of the Fourteenth Amendment."  Compl. ¶¶ 109–43.  This claim is also

dismissed. The Second Circuit has held, "under *Albright*, the Fourteenth Amendment right to substantive due process will not support a federal claim for malicious prosecution." *Singer*, 63 F.3d at 114.

To the extent Plaintiffs bring a malicious prosecution claim grounded in a *procedural* due process violation, the claim is likewise dismissed.[2] Pl. Opp. at 6–7. The Complaint identifies no liberty interest separate from those "guaranteed under the Fourth Amendment," which, as above, are not adequately pleaded. *See supra* Discussion Section II.B. Any purported "freedom from prosecution from the state based on jurisdictionally defective or facially insufficient information[]" fails. *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 265–67 (E.D.N.Y. 2015). "Courts have routinely rejected claims for procedural due process where the alleged liberty interest was premised only on the government actor's compliance with its own procedures, and not also attendant upon a separately articulable substantive right." *Id.* The *Norton* Court dismissed procedural due process claims based upon, as here, a town's "issuance of appearance tickets and accusatory instruments" for town code violations, which were ultimately dismissed as "jurisdictionally defective." *Id.* at 248–52. The asserted liberty interest "was not cognizable under the federal Due Process Clause because it only seeks the Town's compliance with state procedures." *Id.* at 267.

---

[2]     Plaintiffs mention procedural due process in passing in the paragraphs detailing the malicious prosecution, malicious abuse of process, and *Monell* liability causes of action. Compl. ¶¶ 119, 130, 141, 149, 143. Their brief argues the merits of a procedural due process violation in a section devoted to malicious prosecution. *See* Pl. Opp. 6–7. The Court need not decide whether the Complaint gives fair notice of a procedural due process violation because the claim fails regardless.

Therefore, any malicious prosecution claims premised upon violations of the due process clause under the Fourteenth Amendment are dismissed.

### III.   Malicious Abuse of Process

Plaintiffs' § 1983 malicious abuse of process claims require them to establish the claim's elements under New York state law, namely that Defendants "(1) employ[] regularly issued legal process to compel performance or forbearance of some act; (2) with the intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003).  "[T]he malicious abuse of process violates procedural due process protected by the Fifth and Fourteenth Amendment." *Williams*, 769 F. Supp. 2d at 603 (citing *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)).  Defendants move to dismiss this claim on three bases: the allegedly abused process is "simply the issuance of criminal process," the alleged collateral objectives "are fully consistent with" the Village Code provisions, and the claim is untimely. Defs. Mem. at 6–7.  As the claim is untimely, the Court does not address the first two asserted bases.

"Section 1983 does not provide a specific statute of limitations.  Thus, courts apply the statute of limitations for personal injury actions under state law" – three years under New York state law.  *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *see* N.Y. C.P.L.R. § 214(5).  Federal law, however, dictates the date on which a § 1983 claim accrues.  *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007).  An abuse of process claim accrues when the criminal process is "set in

motion—typically at arrest—against the plaintiff.'" *Hagans*, 2020 WL 1289529, at *5 (quoting *Hadid v. City of New York*, 2015 WL 7734098, at *5 (E.D.N.Y. Nov. 30, 2015)); *Duamutef v. Morris*, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997) (Sotomayor, J.) ("Ordinarily, a claim for abuse of process accrues at such time as the criminal process is set in motion—typically at arrest—against the plaintiff.").

Section 1983 malicious abuse of process claims are time-barred if they stem from arrests or tickets for criminal violations predating a civil complaint by more than three years. *E.g.*, *Steinbergin v. City of New York*, 2021 WL 396690, at *5 (S.D.N.Y. Feb. 4, 2021) ("Steinbergin does not contend, and there is no evidence to show, that he was unaware of any facts underlying his [abuse of process] claim until after his arrest; accordingly, his claim accrued on June 21, 2014, when he was arrested. Because he did not bring this action until February 11, 2019, well after the three-year statute of limitations for Section 1983 claims had expired, the claim must be and is dismissed as time barred." (internal citations omitted)); *Hagans*, 2020 WL 1289529, at *5–6 ("[B]ecause Plaintiff's claims for . . . malicious abuse of process arising out of the October 2014 arrest are untimely, Plaintiff's Section 1983 . . . claims based on those claims are also untimely and must be dismissed with prejudice." (capitalization omitted)); *DeMartino v. New York*, 2013 WL 3226789, at *13 (E.D.N.Y. June 24, 2013) ("Since more than three (3) years elapsed between the date Thomas was issued an appearance ticket and the filing of this lawsuit on July 3, 2012, plaintiffs' Section 1983 false arrest and abuse of process claims are time-barred."), *aff'd*, 586 Fed. App'x 68 (2d Cir. 2014); *Kennedy-Bifulco v. Town of Huntington*, 2010

WL 6052343, at *7–8 (E.D.N.Y. Oct. 29, 2010) (Boyle, Mag. J.) ("Plaintiff commenced

the within action on April 18, 2008.  Accordingly, any acts that took place prior to

April 18, 2005 are not actionable as they are barred by the three-year statute of

limitations."), *report and recommendation adopted*, 2011 WL 883697 (E.D.N.Y. Mar.

10, 2011).

   Plaintiffs cite *TADCO Construction Corp. v. Dormitory Authority of State of*

*New York* to suggest their abuse of process claim did not accrue "until the underlying

action" terminated "in [their] favor by dismissal."  Pl. Opp. at 20 (quoting 700 F. Supp.

2d 253, 273 (E.D.N.Y. 2010)).  This position, unfortunately, confuses state and federal

law.  In the quoted passage, the *TADCO Construction* Court is analyzing malicious

abuse of process claims under New York *state* law, not § 1983 *federal* law.  700 F.

Supp. 2d at 272–73 & n.10 ("DeMartino alleges identical causes of action under New

York law, for false arrest, malicious prosecution and abuse of process.  Defendants

argue that these state law claims are time-barred . . . .").

   Plaintiffs also argue that the malicious abuse of process claim is a "continuing

tort" for the purposes of the statute of limitations.  Pl. Opp. at 17–18.  Under this

doctrine, a "continuous practice and policy of discrimination" delays "the

commencement of the statute of limitations period . . . until the last discriminatory

act in furtherance of it."  *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)

(internal quotation marks omitted).  "As a general matter, the continuing [tort]

doctrine is heavily disfavored in the Second Circuit and courts have been loath to

apply it absent a showing of compelling circumstances."  *Kennedy-Bifulco*, 2010 WL

6052343, at *7 (quoting *Kubicek v. Westchester County*, 2009 WL 3720155, at *6 (S.D.N.Y. 2009)). Plaintiffs contend their abuse of process claims comprise a continuing tort due to "the ongoing abuse and injury inflicted and damages incurred . . . suffered over a period of years, until the yoke was removed by the Appellate Term." Pl. Opp. at 18. But no allegations plausibly suggest Defendants' treatment connects to a "policy or practice" nor did the alleged discriminatory incidents "go unremedied for so long as to amount to a discriminatory policy or practice." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996). No "compelling circumstances" are presented to persuade the Court otherwise. *See Kennedy-Bifulco*, 2010 WL 6052343, at *7.

The Complaint—filed May 21, 2020—alleges that Plaintiffs were ticketed on July 7, 2016. Even if Plaintiffs were unaware of the charges on that date, they became aware in October 2016 at the latest – when they moved to dismiss those charges. Compl. ¶¶ 75, 77. Either scenario predates the Plaintiffs' Complaint by more than three years, requiring the Court to hold Plaintiffs' malicious abuse of process claims under the Fifth and Fourteenth Amendments time-barred. Accordingly, they are dismissed.

## IV. Conspiracy

Though the Complaint fails to identify the legal basis for Plaintiffs' conspiracy claim, *see* Compl. ¶¶ 144–51, their opposition brief argues a 42 U.S.C. § 1985(3) violation, Pl. Opp. 18–19. Section 1985(3) "prohibits conspiracies by two or more persons that interfere with and injury any person's civil rights." *Mangino*, 739 F.

Supp. 2d at 258.   Plaintiffs must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006)).   An actionable conspiracy must be "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (internal quotation marks omitted).   It also "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."   *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003) (internal quotation marks omitted).

Defendants argue the "intra-corporate conspiracy doctrine" bars this claim. Defs. Mem. at 7.   "[T]here is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 388 (S.D.N.Y. 2013) ("Under the intracorporate conspiracy doctrine, 'officers, agents and employees of a single corporate entity are legally incapable of conspiring together.'" (quoting *Hartline v. Gallo,* 546 F.3d 95, 99 n.3 (2d Cir. 2008)).   The doctrine applies to public entities.   *Everson v. N.Y.C. Transit*

*Auth.*, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002) (citing cases).  There is an exception, however, titled the "personal stake" exception.  *Chamberlain*, 986 F. Supp. 2d at 388.  When alleged conspirators "act[] outside of the scope of their employment and in pursuit of personal motives," they are not shielded by the intracorporate conspiracy doctrine.  *Galgano v. County of Putnam*, 2020 WL 3618512, at *16 (S.D.N.Y. July 2, 2020) (citing *Nassau County Employee "L" v. County of Nassau*, 345 F. Supp. 2d 293, 304 (E.D.N.Y. 2004)).

There is some disagreement among district courts in the Second Circuit as to whether the exception requires "every defendant [to be] motivated by a personal interest in carrying out the alleged unconstitutional conduct."  *Zilioli v. City of New York*, 2020 WL 1548763, at *5 n.6 (S.D.N.Y. Apr. 1, 2020).  Some apply the exception only where "each and every defendant is alleged to have been motivated by a personal interest" wholly separate from that mobilizing the conspiracy.  *E.g.*, *Tardd v. Brookhaven Nat'l Lab.*, 407 F. Supp. 2d 404, 414 (E.D.N.Y. 2006); *see also Everson*, 216 F. Supp. 2d at 76 (quoting *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 347, 360 (E.D.N.Y. 1999)).  Others apply the exception where there is a "multiplicity" of interests, *i.e.*, at least one individual with a personal interest in addition to the conspiratorial end.  *Alvarez v. City of New York*, 2012 WL 6212612, at *3 n.30 (S.D.N.Y. Dec. 12, 2012); *Tavoloni v. Mt. Sinai Med. Ctr.*, 984 F. Supp. 196, 206 (S.D.N.Y. 1997) (intra-corporate conspiracy doctrine only applies if "none of the members" have an "independent personal stake" separate from the broader

conspiracy's objective).  The Court need not comment further on the issue, as the Plaintiffs' § 1985(3) claim fails on a more basic level.

No allegations suggest "a common agreement to violate the law" between two or more persons.  *E.g.*, *Farbstein v. Hicksville Pub. Library*, 254 Fed. App'x 50, 51 (2d Cir. 2007).  Only conclusory allegations support "a meeting of the minds" to violate Plaintiffs' constitutional rights.  *Webb*, 340 F.3d at 110; *Thomas v. Roach*, 165 F.3d 137, 146–47 (2d Cir. 1999) (dismissing claim due to the absence of a "tacit understanding to carry out the prohibited conduct").  Defendant James T. Murphy, the Village Attorney, is not plausibly alleged to share in the conspiracy; Murphy's conduct aligns with the scope of his employment and his duties as an attorney.  Compl. ¶ 63 (Murphy wrote to Plaintiffs' to notify them of ongoing violations of Village Code); *see also id.* ¶¶ 70–73, 86, 88, 102.  Neither is Murphy alleged to have a personal stake – he has no "long-standing business, social and/or personal relationship" with the Plaintiffs' neighbors that Levy allegedly had and for whose benefit Levy allegedly acted.  *Id.* ¶¶ 2, 39–40, 146 (alleging a prosecution "for the benefit of the Mayor's cronies").  Simply alleging, "[u]pon information and belief, Murphy wrote this letter at the direction of, or with the prior knowledge and consent, of Levy" is not enough to make him a co-conspirator.  *Id.* ¶¶ 71, 146–48, 156; *Nassau County Employee "L"*, 345 F. Supp. 2d at 305 (dismissing conspiracy claims where the "complaint does not allege that [a defendant's] actions were separate and apart from his official duties or otherwise improperly motivated"); *see also Cater v. New York*,

316 F. Supp. 3d 660, 671–72 (S.D.N.Y. 2018) (refusing to "infer a conspiracy" where only "conclusory allegations suggest" a conspiratorial relationship).

Indeed, the only individual whose alleged actions approximate an objective to violate Plaintiffs' civil rights is Levy – and the Complaint alleges he acted "unilaterally" with purposes known only to himself.  Compl. ¶¶ 93, 156 ("Mayor Levy, acting on behalf of the Village of Saddle Rock, acted unilaterally under state law, issuing orders to Lauria and to Levy . . . ."); *id.* ¶ 157 ("Mayor Levy, acting on behalf of the Village of Saddle Rock, effectively made and enforced the Village's actions against the Plaintiffs relative to all aspects of the prosecution . . . ."); *id.* ¶ 162 ("The Village of Saddle Rock is a small fiefdom which was controlled by Mayor Levy, by his domination over the Board, and the Village employees, allowing him to decide and act unilaterally and effectively and to make and enforce the Village's conduct relative to all aspects of the prosecution against the Plaintiffs, as stated above.").  Because a lone individual cannot conspire with himself, Levy could not have participated in a conspiracy.  42 U.S.C. § 1985(3) (requiring "two or more persons"); *Farbstein*, 254 Fed. App'x at 51 (citing *Herrmann*, 576 F.2d at 459); *Heinfling v. Colapinto*, 946 F. Supp. 260, 267 (S.D.N.Y. 1996) ("Simply stated, [defendant] Soltis could not conspire with himself under § 1985(3).").

Even if the Complaint set forth a factual basis for a § 1985(3) conspiracy, the claim would be time-barred.  "[C]onstitutional claims under § 1983, such as . . . abuse of process, and . . . § 1985(3)" have their applicable limitations period "accrue[] at the time of the events that caused the injury."  *Panetta v. Cassel*, 2020 WL 2521533, at

*5 (S.D.N.Y. May 18, 2020).  As with the abuse of process claims, the injury-causing events occurred more than three years before Plaintiffs filed their Complaint, *see supra* Discussion Section III, rendering the § 1985(3) claim time-barred.

Plaintiffs' § 1985(3) conspiracy claims are therefore dismissed.[3]

## V.  *Monell* **Liability**

The Supreme Court in *Monell v. Department of Social Services* held that plaintiffs can hold municipal entities liable under § 1983 by proving: (1) a municipal policy or custom (2) causes plaintiffs to be subjected to (3) the deprivation of a constitutional right.  436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.E.2d 611 (1978); *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020).  *Monell* liability is not akin to traditional common law vicarious liability – "a municipality may not be found liable simply because one of its employees committed a tort."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.E.2d 452 (1986); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.E.2d 626 (1997); *Newton v. City of New York*, 566 F. Supp. 2d 256, 270–71 (S.D.N.Y. 2008).  A single act taken by an employee can reflect a "municipal policy" sufficient to impose *Monell* liability if, as a matter of state law, the employee "has final policymaking authority in the

---

[3]    A related issue, unraised by the parties, is a dearth in non-conclusory allegations that an invidious discriminatory animus motivated the conspirators.  *See* Compl. ¶¶ 41, 61, 92; *see Cine SK8, Inc.*, 507 F.3d at 791; *Wong v. Yoo*, 649 F. Supp. 2d 34, 71 (E.D.N.Y. 2009) ("Where only one conspirator was so motivated, the conspiracy does not fall within the scope of § 1985(3)." (internal quotation marks omitted)).  The Court reaches its conclusion independent of this issue.

area in which the action was taken." *Newton*, 566 F. Supp. 2d at 271 (citing *Pembaur*, 475 U.S. at 480–81).

"An underlying constitutional violation is a prerequisite to [*Monell*] municipal liability." *Lopez v. City of New York*, 2021 WL 466974, at *7 (S.D.N.Y. Feb. 9, 2021) (citing *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)); *Cancel v. N.Y.P.D. Comm'r Raymond Kelly*, 2016 WL 590230, at *7 (S.D.N.Y. Feb. 11, 2016) ("Because all of Plaintiff's constitutional claims fail as a matter of law, any claim Plaintiff might have under *Monell* also fails."). Because Plaintiffs' § 1983 causes of action have been dismissed, *see supra* Discussion Sections II & III, Defendant Village of Saddle Rock cannot be liable under *Monell*.

## VI.   Selective Enforcement

Plaintiffs also devote a section of their malicious prosecution briefing to argue selective enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment. Like procedural due process, Plaintiffs bring no separate cause of action on this basis; there are only stray references within the Complaint to Equal Protection. *See* Compl. ¶¶ 130, 141, 149. The Court need not decide whether the Complaint gives fair notice of an Equal Protection violation because the claim is time-barred.

As with the malicious abuse of process claims, a § 1983 claim based on selective enforcement in violation of the Equal Protection Clause accrues at "the time of the unlawful act, not the point at which the consequences of the act become painful." *See Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994) (internal quotation marks

omitted) (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981)). Applied here, a selective enforcement claim accrues upon enforcement, *i.e.*, "when the plaintiff knows or has reasons to know of the harm." *Melchner v. Town of Carmel*, 2014 WL 6665755, at *2 (S.D.N.Y. Nov. 21, 2014) ("The latest the Melchners knew or had reason to know defendants . . . selectively enforced the Zoning Code against them for impermissible reasons was when the Town commenced its last suit against them . . . ."); *e.g.*, *Washington*, 373 F.3d at 319 ("As with all discrimination claims, plaintiffs' claims accrued when they knew or should have known of the discriminatory action. That is, the claim accrued when plaintiffs knew or had reason to know that defendants filed the charges."); *Dellinger v. Town of Huntington*, 2018 WL 6576051, at *7 (E.D.N.Y. Aug. 29, 2018) (Mag. J., Brown) ("[P]laintiffs' claim accrued no later than the allegedly improper issuance of the Violation notice."), *report and recommendation adopted*, 2018 WL 6168181 (E.D.N.Y. Nov. 26, 2018); *4 West Assocs. LLC v. East Hampton Town*, 2014 WL 2711918, at *2 (E.D.N.Y. June 10, 2014); *Hall v. Town of Brighton*, 2014 WL 340106, at *4 (W.D.N.Y. Jan. 30, 2014) ("It is axiomatic that a cause of action for selective enforcement of a code cannot accrue until some enforcement action has actually taken place. The first notice that plaintiff received of the enforcement of a code provision against her came . . . when the Town informed her that she was in violation of the town code, that enforcement action was being taken against her, and that she was required to appear before the Town to answer the charge against her.").

Plaintiffs first learned of the enforcement against them when they were ticketed on July 7, 2016 or when they moved to dismiss it in October 2016, either of which predates their May 21, 2020 Complaint by more than three years. Compl. ¶¶ 75, 77. Any selective enforcement claims are therefore time-barred and dismissed.

## VII.   State Law Claims

All the claims over which the Court had original jurisdiction have been dismissed. Where all federal claims are eliminated before trial, the "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state law claims. *Kolari v. N.Y.-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). Therefore, to the extent any state law causes of action remain, the Court declines to exercise supplemental jurisdiction and they are dismissed without prejudice to renew in state court. *See* 28 U.S.C. § 1367(c)(3); *e.g., Manbeck*, 640 F. Supp. 2d at 385.

## VIII.   Leave to Amend

Plaintiffs application for leave to amend is denied. Though Federal Rule of Civil Procedure instructs court to "freely give" leave to amend, any such amendment would be futile. Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). "Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations." *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000). The following claims are time-barred: malicious abuse of process, conspiracy, and selective enforcement.

As to the malicious prosecution and *Monell* liability causes of action (and the conspiracy claim as well), the problem "is substantive; better pleading will not cure it.  Repleading would thus be futile."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Accordingly, leave to amend is denied.

**CONCLUSION**

For the reasons discussed above, Defendants' motion is GRANTED and Plaintiffs' case is DISMISSED.  The Clerk of Court is respectfully directed to terminate the action.

**SO ORDERED.**

Dated: Central Islip, New York          s/ Denis R. Hurley
      March 30, 2021                      Denis R. Hurley
                                    United States District Judge